IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROSA E. BERMUDEZ,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO. 11-2011 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Rosa E. Bermúdez (hereafter plaintiff "Bermúdez") filed this action seeking judicial review of the final decision of defendant, the Commissioner of Social Security (hereafter "Commissioner"), denying her application for a period of disability and ensuing disability benefits. (Docket No. 1).[1]

On October 24, 2011, before the Commissioner had answered the Complaint or filed copy of the administrative record, the case was referred to a Magistrate Judge as an implied consent upon plaintiff's failure to respond to the order issued on October 13, 2011. Plaintiff then after consented to jurisdiction of a Magistrate Judge. (Docket No. 18). On July 30, 2012, plaintiff filed her memorandum of law and the Commissioner then filed his memorandum on March 9, 2012. (Docket Nos. 16 and 17).

Upon examination of the pleadings, including a review of the administrative record, and the applicable legal provisions, this Magistrate Judge discusses below the pending motions and vacates the decision of the Commissioner.

---

[1] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner.
  "... [t]he court shall have power to enter, upon the pleadings and transcript
  of the record, a judgment without remanding the cause for rehearing". Section 205(g).

## BACKGROUND

On September 28, 2005, plaintiff Bermúdez filed an application for a period of disability and disability insurance benefits with alleged onset disability date of August 20, 2004. The application was initially denied and was also denied on reconsideration. After an administrative hearing was held, the presiding Administrative Law Judge ("ALJ") considered the evidence and issued an opinion finding plaintiff not under disability at least up to April 1, 2006.[2] The Appeals Council denied review.

Plaintiff has now filed the present case requesting judicial review from this final administrative determination denying her claim for the protected period of onset disability from August 20, 2004, through April 1, 2006.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

Plaintiff Bermúdez worked for almost thirty (30) years in the garment industry as inspector and packer, tasks that were considered of light to medium level of exertion, unskilled or semi-skilled in nature. She complained of pain in her right shoulder. She is a diabetic and suffers migraine headaches. Plaintiff Bermúdez also developed a subluxation of the right shoulder aggravated by inflammatory tendinitis and subsequently a tendon tear for which she underwent surgery. Plaintiff Bermúdez received treatment for depression since August 9, 2005. There is a diagnosis of moderate psychomotor retardation and major depressive disorder, moderate, with impaired social interaction. Attention and concentration

---

[2] The ALJ determined that beginning on April 1, 2006, considering plaintiff's age that was closely approaching advanced age, education, work experience and residual functional capacity to a sedentary level, there were no significant number of jobs in the national economy. Thus, Bermúdez was considered disabled and entitled to disability benefits beginning on April 1, 2006.

Rosa E. Bermúdez v. Commissioner of S.S.
Opinion and Order
Civil No. 11-2011 (CVR)
Page No. 3

were assessed as being constantly interfered by pain, she was not able to lift more than ten (10) pounds and was absent from regular work routine more than four (4) days per month.

A vocational expert testified at the administrative hearing regarding hypothetical questions as to limitations imposed by plaintiff's exertional and non-exertional conditions, including that her right arm was stationary at the side of the thorax and the lower arm could move without restrictions. It was also proposed that plaintiff Bermúdez was limited in that she could not hold her concentration and attention for more than two (2) consecutive hours or persist in consecutive tasks. The vocational expert indicated under such premises plaintiff Bermúdez could not maintain pace and rhythm at the garment industry that could satisfy production level in her previous jobs, which were assessed as light in level of exertion.

The ALJ concluded the impairments were severe in that plaintiff had right shoulder and right hand conditions, but none that would meet the Listing of Impairments. However, the imposed non-exertional mental and exertional limitations on plaintiff's residual functional capacity for medium work prior to April 1, 2006, allowed plaintiff Bermúdez to perform her previous jobs, except for her right arm being stationary at the side of the thorax and the lower arm to move without restrictions. Thus, being determined by the ALJ as able to perform her previous jobs, which were light/medium, unskilled to low semi-skilled in nature, Bermúdez was found not under disability. Furthermore, the ALJ concluded that after April 1, 2006, plaintiff Bermúdez' residual functional capacity was reduced to sedentary and she was unable to perform her past relevant work. Since she was closely approaching advanced age, the ALJ concluded there were no significant number of jobs available, for which she was found disabled at the beginning of April 1, 2006 but not before.

## LEGAL ANALYSIS

The Court's review in this type of cases is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *See* Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove disability within the meaning of the Social Security Act. *See* Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; *see* Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Sec. of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e). This was the final step in the present case as to the protected period for claimed disability for plaintiff Bermúdez who was

found able to carry out her former work from the alleged onset date of August 20, 2004, at least up to April 1, 2006.

Only if it had been determined that the claimant cannot perform her former kind of work, then the fifth and final step of the process would demand a determination on whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. §§ 404.1520(f). The ALJ in the instant case followed only up to step four, upon having determined plaintiff Bermúdez was not disabled for being able to perform, without limitations of an exertional or a non-exertional nature, her previous jobs up until April 1, 2006.

The claimant has the burden, under steps one through four, of proving that he/she cannot return to his/her former employment because of the alleged disability. Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991).

In the present case, plaintiff Bermúdez was found by the ALJ able to perform her previous past relevant work in the garment industry for she was found to retain the residual functional capacity for medium and consequently also light level of work. Thus, there was no need to continue in regards to any other job she could still perform after said step four consideration. The ALJ concluded plaintiff was not entitled to a disability determination since onset date up to April 1, 2006.

In the memorandum of law, plaintiff Bermúdez submits the ALJ's determination was not supported by substantial evidence nor did it apply the correct legal standards. The ALJ's questions to the vocational expert did not convey all of plaintiff Bermúdez' limitations for

he did not pose the limitations prior to April 1, 2006, which the ALJ had indeed determined previously. Plaintiff submits that, since the ALJ had already determined that plaintiff Bermúdez could not move her right dominant upper arm, which had to be adjacent to the thorax, the performance of previous work as hand packer which required reaching constantly, was not properly addressed. (Docket No. 16).

The Commissioner's memorandum, on the other hand, discusses that plaintiff, who is right handed, worked for nearly thirty (30) years as inspector and packer at a sewing factory where she had to lift boxes regularly of twenty (20) to twenty-five (25) pounds and sometimes up to fifty (50) pounds. The vocational expert Dr. Héctor Puig testified that performance of garment inspections and packing requires different exertional levels. If an individual could perform sedentary work, was unable to lift with the right dominant hand above head level and was limited to simple, repetitive tasks, not having contact with the public but maximum occasional contact with supervisors and co-workers, she could perform her past occupations and there were a significant number of positions available in the local economy. (Docket No. 17).

Insofar the relevant medical evidence, the ALJ found that from August 20, 2004, the alleged onset date of disability, and up to March 31, 2006, plaintiff had severe right shoulder and right hand conditions that did not meet the Listing of Impairments. With the vocational expert's testimony, that work as inspector/packager in the garment industry was performed at different exertional levels, having the ALJ conclude plaintiff Bermúdez retained the residual functional capacity to perform her past relevant type of work within the medium and light levels of exertion, plaintiff was found not to be under disability prior to April 1,

2006. As to the hypothetical questions to the vocational expert being predicated on residual functional capacity for sedentary work, the Commissioner found no relevance since medium work capacity also encompassed sedentary type of work. Even considering the limited movement of plaintiff Bermúdez' right hand, the vocational expert Dr. Puig indicated she could meet the requirements of employment as garment inspector and packager.

On the basis of the available medical evidence, the ALJ concluded plaintiff Bermúdez was a diabetic and complained of migraine and generalized arthralgias. She developed a sudden onset subluxation of her right shoulder aggravated by inflammatory tendinitis until she suffered a subsequent tendon tear. Surgery failed to provide desired relief and developed a frozen shoulder syndrome. Plaintiff also had hypertension, arthritis and clinical depression.

Plaintiff Bermúdez' mental condition was treated since August 9, 2005 with symptoms of irritability, crying spells, insomnia, anhedonia, low energy levels, appetite disturbances and trouble thinking and concentrating for some six (6) months prior to such date. Plaintiff was reported as having psychomotor retardation, depressed mood and superficial insight and judgment, which mildly improved with treatment within two (2) months, although scored as severe in the scale for obsessive compulsive. The ALJ concluded the evidence of medically determinable impairments was reasonably expected to produce the alleged symptoms but their persistence and limiting effects were not considered credible prior to April 1, 2006.[3]

---

[3] Such credibility must have been based on the record since plaintiff Bermúdez did not testify nor was present at the administrative hearing. (Docket No. 8, Transcript pp 26).

The ALJ also indicated having given greater weight to the opinions of consultative examiners Dr. Armando I. Caro and Dr. Michael Babilonia-Román as to there being no evidence of total inability to work. Less weight was given to the opinion of Dr. Ronald Malavé as to marked or severed limitations in many areas of functioning for he did not personally sign the progress notes at the treating institution, Centro de Salud Conductual del Oeste (hereafter "CSCO"). Meanwhile, the treating physicians Dr. Castaign and Quiñones reported to seeing plaintiff Bermúdez every two (2) weeks or every two (2) months, as needed. Their reports were considered more credible since they showed the patient's improvement as mild but described her response to medication, and external stressors, that she was living by herself and pain was managed with regular medications.

Having the testimony of the vocational expert in that prior to April 1, 2006, plaintiff's previous relevant work as inspector/packer in the garment industry was within medium to light level of exertion and further finding that plaintiff Bermúdez retained residual functional capacity for medium type of work, the ALJ concluded she could still perform these type of jobs. Additionally, there were some 1,500 of these jobs that existed in the area.

However, the ALJ also determined that beginning on April 1, 2006, plaintiff Bermúdez' continued to deteriorate and developed greater limitations, such as reduced function of the right shoulder area, which had become frozen. Her mental condition was also considered to have worsened. (*Id.*, p. 27). These additional non-exertional limitations further eroded plaintiff's occupational base and she was then limited to simple, repetitive work, with no contact with the public and only occasional contact with peers and

supervisors, as well as being able to do only gross manipulation and no gross movements. As such, beginning on April 1, 2006, plaintiff's residual functional capacity for sedentary type of work prevented her from performing her past relevant work. In addition, there were no significant number of jobs in the national economy that she could still perform. (*Id.*, p. 28). For these other reasons, plaintiff was found under disability after April 1, 2006.

The Court of Appeals for the First Circuit has indicated an ALJ is "not required to recite every piece of evidence that favored appellant." *See* Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise). *See* 20 C.F.R. § 404.1527(d) ("We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

Courts give deference to the ALJ's interpretation of the medical record and notice that, although an ALJ is not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion, upon the existence of conflicts in the medical record from the report and sources, it is still not for the Court to resolve same. *See* Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999); Lizotte v. Secretary of Health & Human Servs., 654 F.2d 127 (1st Cir. 1981) (the resolutions of conflicts in the evidence and the determination of the ultimate question of disability is for him [the ALJ], not for the doctors or for the courts). *See also* Rodríguez v. Secretary of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

This Magistrate Judge has considered above findings of the ALJ and additionally reviewed the record as a whole to determine whether the evidence therein presented is substantial evidence in support of the administrative decision. The discussion below concludes there is no such substantial evidence to support denial of disability determination for the protected period of August 20, 2004 through March 31, 2006.

A perusal of the available record shows plaintiff Bermúdez worked in the garment industry for almost thirty (30) years, where upon inspecting the sewing and cutting threads as necessary had to pack individually and placed dozens inside boxes weighting approximately twenty (20) to twenty five (25) pounds. These boxes were carried five (5) to ten (10) feet to be placed on top of each other for someone to pick them up. She would occasionally carry up to fifty (50) pounds and twenty five (25) pounds frequently. (Docket No. 8, Transcript, pp. 121-126). During a work day, Bermúdez walked for about one (1) hour, stand for about four (4) and sit for three (3), while handling or managing large objects all the time. (*Id.*, p. 127).

Because of the alleged pain and lack of mobility of her right arm, plaintiff Bermúdez has the help of her sister to attend to personal needs, get dressed and do household chores. (*Id.*, p. 135).

A review of the medical evidence in the record shows plaintiff Bermúdez has been treated by Dr. Raymond Tossas-Estrada since 2005 for osteoarthritis, hypertension, diabetes mellitus, depression, status post recurrent right shoulder subluxation with aggravating tendinitis, frozen shoulder syndrome and posterior tendon tear. Pain medications include Naproxen 500mg and Vicodin ES. (*Id.*, p. 161).

Regarding a diagnosed major depressive disorder, treatment is shown from December 2007 with pharmacotheraphy and psychotherapy. Medications include Effexor, Vistaril and Xanax. (*Id.*). Dr. Suzette Toro-Soto refers to treatment since 2001 every three (3) months because of glucose intolerance, right shoulder pain and a good prognosis. Other symptoms included fatigue, episodic vision blurriness, muscle weakness, psychological problem, extremity pain and numbness, difficulty thinking/concentrating, headaches. Pain was considered moderate upon right shoulder movement.

As to the presence of a psychological condition, it can also be noted that Bermúdez suffered from depression and anxiety. The notes refers that the patient is not to sit at one time for more than one (1) hour, stand for forty five (45) minutes, and alternate between stand/walk in an eight (8) hour shift for less than two (2) hours. (Docket No. 8, Transcript, pp. 168-169).

On August of 2005, Bermúdez underwent surgery for repair of tendon of the right shoulder causing right shoulder instability. (Docket No. 8, Transcript, pp. 221-225). The prognosis shown by Dr. Ramón Dávila was poor. (*Id.*, p. 226). She is not to lift and/or carry more than ten (10) pounds and should not stoop, bend, crouch or climb ladders. (*Id.*, p. 228).

Dr. Caro provided a psychiatric evaluation dated February 6, 2006, referring to depression since two (2) years prior upon a worsening of her right shoulder condition. The patient's siblings and niece helped with her daily house chores. (*Id.*, p. 173).
Upon examination, she had limited eye contact and her attention span was short. Speech was fluent, coherent and logical. Affect was constricted and she was oriented in the three

(3) spheres. Concentration was fair but she was not able to perform mathematical chores given. Her immediate, recent and remote memory were preserved. The diagnosis was of major depressive disorder moderate and her capacity for social interaction was impaired. (*Id.*, p. 174). Dr. Orlando Reboredo confirmed a diagnosis of mood disorder with depression and anxiety due to medical conditions. (*Id.*, p. 202).

Dr. Babilonia-Román, a rheumatologist, referred to a history of osteoarthritis and diabetes type 2. She was also under medication for pain with Vicodin and Zolof, Temazepam and Elavil for her mental condition, and Fioricet for migraines. The right shoulder had limitation of movement and there was pain in the cervical and lumbar areas and right shoulder articulations. (*Id.*, pp. 177-181).

Dr. Tossas-Estrada treated the patient monthly or bi-monthly from 2005 through 2008. Evolution was poor after surgery for ligament tearing. The diagnostic impression states there was inflammatory tendinitis aggravation of the right shoulder subluxation, referred as a frozen shoulder syndrome and subsequent tearing of tendons. Clinical depression and psychomotor retardation were present . (Docket No. 8, Transcript, pp. 236, 239 and 244).

Notes from the record of the CSCO from Dr. Quiñones and Castaig indicate a first visit by September 2005 and last visit February 2007. There was a prior history since August of 2004 of symptoms and limitations imposed by the condition diagnosed DSM-IV 300.01, 300.02, 300.3 and 300.29. Pharmacotheraphy was adjusted and increased to Prozac, Klonopin, Zolof, Trazodone, Temazepam, Vistaril, Ativan, among others. (*Id.*, p. 255). The CSCO progress notes thereafter are consistent as to the mental condition and

Rosa E. Bermúdez v. Commissioner of S.S.
Opinion and Order
Civil No. 11-2011 (CVR)
Page No. 14

treatment, including the adjustment to different medications and dosages for depression and anxiety.

To review the final decision of the Commissioner courts must determine if the evidence of record meets the substantial evidence criteria. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[4] The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. *See* Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

The evidence on the record shows the pain and right shoulder instability were treated from November 2002 through August 5, 2005, by Dr. Dávila. There was tenderness, muscle spasm, muscle weakness, swelling, motor loss, reduced grip strength and dropping of things, in addition to chronic fatigue, sensory changes, impaired sleep and appetite. (Docket No. 8, Transcript p. 226).

In addition, plaintiff has been receiving treatment for her mental condition since 2005 and the record shows depression and anxiety, with pain constantly present. (*Id.*, p. 228). The period of 2005 through 2007, that covers the CSCO's progress notes, indicates Bermúdez was undergoing pharmacotherapy and individual and supportive psychotherapy.

---

[4] Falu v. Secretary of Health & Human Servs., 703 F. 2d 24 (1st Cir. 1983).

She was assessed with poor attention and concentration and moderate insight. (*Id.*, pp. 235-240).

Taking the above into consideration, this Magistrate Judge opines the decision of the Commissioner is not supported by substantial evidence in the record as whole, insofar as plaintiff's mental condition and other exertional limitations that would preclude performance of plaintiff's former type of work and, thus, served as grounds to determine she was not under disability prior to April 1, 2006.

As such, the decision of the Commissioner is VACATED.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge, having carefully perused the record and considered whether there was no substantial evidence in support of the decision rendered by the Commissioner determines the Commissioner's decision shall be VACATED.

IT IS SO ORDERED.

Judgment to be entered accordingly.

In San Juan, Puerto Rico, on this 4th day of December of 2012.

           S/CAMILLE L. VELEZ-RIVE
           CAMILLE L. VELEZ RIVE
           UNITED STATES MAGISTRATE JUDGE